# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

GENNARO JOSEPH PISCOPO

    Petitioner,                         CASE NO. 2:07-CV-15398
                                         HONORABLE VICTORIA ROBERTS
v.                                           UNITED STATES DISTRICT JUDGE

STATE OF MICHIGAN                  HON. VIRGINIA M. MORGAN
                                                UNITED STATES MAGISTRATE JUDGE

    Respondent
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, AND ISSUING A CERTIFICATE OF APPEALABILITY AS TO CLAIMS I AND II

### I. INTRODUCTION

Gennaro Joseph Piscopo ("Petitioner") seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2554. Petitioner challenges his conviction for fourth-degree criminal sexual conduct, contending that he was convicted in violation of his constitutional rights of confrontation and to present a defense. For the reasons stated below, Petitioner's application for writ of habeas corpus is **DENIED**.

### II. BACKGROUND

The Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review. *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009) (citing 28 U.S.C. § 2254(e)(1)).

Three complainants, KB, KR, and CPG, alleged that defendant, a pastor at the church they attended, sexually assaulted them during a religious practice known as the "deliverance." KB and KR both alleged that defendant sexually assaulted them during a deliverance service held at defendant's church on November 18, 2001. CPG alleged that defendant assaulted her during a private deliverance service in his home in September 1995. Defendant was charged with two counts of second-degree CSC (CSC-2), MCL 750.520c(1)(d) (non-penetrative sexual contact by force or coercion, involving accomplices) arising from KB's allegations, and three additional counts of CSC-4, one pertaining to KR and two pertaining to CPG. All three complainants' charges were tried jointly. Defendant was acquitted of the first count involving KB, but convicted of the lesser-included offense of CSC-4 on the second count. He was acquitted of all counts involving KR and CPG.

Defendant's denomination practices a ritual called the "deliverance" to exorcise demons from persons. Adherents to the church believe that the ritual casts out evil spirits from participants and frees them from past hurts and experiences that are impeding their spirituality. Defendant's church held a deliverance service each month, with a deliverance ritual serving as the final event. Defendant informed the participants that the doors would be locked, and anyone who tried to leave would be restrained. Defendant also instructed participants not to tell anyone what happens during the deliverance. Family members were separated from each other. Two or three church workers were assigned to minister to each participant. One worker sat in a chair facing the participant, both with legs stretched forward, with the worker's knees straddling the participant's knees. Two other workers stood close by. Workers were not assigned or teamed according to sex, and a participant's workers could be all male, all female, or mixed. The workers leaned toward the participant with their faces only a few inches apart. The workers then began to scream at the participants. The alleged purpose of the screaming was to rebuke and cast out evil spirits.

Defendant's church taught that if the deliverance was successful, meaning that the participant was delivered of whatever evil spirits were inside, the participant would "manifest" the deliverance by screaming, crying, yawning, or shaking, and sometimes by vomiting. Participants were not permitted to leave their seats or look around the room. If a participant tried to look around, the worker would grab her face and force her to face the workers. The entire deliverance session lasts about 3 to 3-1/2 hours.

Of the approximately one hundred persons attending the November 2001 deliverance, thirty or forty were participants, and the rest were workers. Complainant KB and her husband, JB, had attended defendant's church a few

times and decided to attend the November 2001 deliverance service. KB had attended deliverance services in other churches, but those involved intense prayer with a female partner, and no screaming or physical contact with males. KB found the deliverance ritual discomfiting and religiously illegitimate. She was disturbed by the screaming and the physical contact with male workers, and believed that the leg straddling, especially with male workers, was inappropriate and contrary to God's requirements. KB did not try to leave, because she believed it would be futile. She did not respond to the workers' screaming, and sat quietly in her chair.

Because KB was not manifesting deliverance of her evil spirits by screaming or other visible reaction, the workers stepped up their efforts to "deliver" her. After about an hour and a half, defendant came to KB and whispered in her ear that she was obligated to cooperate because the paperwork she had signed was a legal contract. Defendant did not touch KB at this time. When defendant left, the facilitators resumed screaming at KB, and told her that she had to cooperate for her own good. KB still refused to participate, and she kept thinking "that this is not of God."

Defendant returned and spoke into KB's ear again. He told the three workers around KB to leave, and then gestured with his hand to summon two tall men. The men held her arms above the elbows. Defendant stood behind her chair and pressed his chest against her back. He rubbed her arms with his hands. He rubbed her legs and ran his fingers through her hair. Defendant rubbed her arms and legs again, and then started to rub her breasts, abdomen, and between her legs. He rubbed one breast with each hand, then her abdomen, and then her vaginal area. KB testified that these actions occurred very quickly. KB told defendant to stop touching her because it was wrong. She felt shocked and traumatized. KB estimated that defendant touched her breasts three to five times, and her genitals twice. She did not try to fight back or stand up.

KB eventually decided to cooperate, because she was afraid of what else defendant might do. She started crying and screaming and continued to do so until the deliverance was over, so that defendant would think that she was cooperating. When the deliverance was over, the participants and workers rose for a final prayer. Defendant came to KB and told her that he was glad that she cooperated. Defendant called the participants into the church sanctuary for "follow up instructions." He then said, "there are some of you women that might not have felt comfortable with what happened and-and I call that the 'hoochie coochie' ... but I don't want to hear any complaining." The next day, KB reported the incident to the police.

Defendant denied touching any of the complainants inappropriately. He stated

> that one of the female workers put her hand on KB's stomach, and he put his hand over the worker's hand and prayed for her. He explained that he did this because there is sometimes activity in the participant's stomach during deliverance. He tapped KB on the arms because he has found from his experience that this is "very effective" for women who have been abused in the past.
>
> Defendant paid special attention to KB because he could tell that she was not releasing her demons or responding to the deliverance, and he wanted her to have a "greater manifestation," which would be evident from yawning, coughing, screaming, or shaking. He touched her on two occasions because it sometimes takes repeated efforts to get the demons to leave. After he tapped her on the arms, she began to cry. Defendant testified that his workers "lightly restrained" KB, in accordance with his instructions, as a preventative measure. He stated that other workers laid hands on her while he prayed over her, and that there were probably ten hands on her. Defendant explained the term "hoochie coochie," stating that he often uses this term after the deliverance to make light of the three-hour intense experience. The term was coined by a former church member.
>
> Defendant also presented the testimony of several workers who attended to KB during the ritual or were present during the ritual. None of the witnesses reported observing any improper contacts to the breast or thigh area. Rather, they identified contact to the arms and outside of the legs only. Despite this testimony and the fact that the conduct occurred in the presence of a multitude of witnesses, defendant was convicted of the offense of CSC-4 with respect to KB.

*People v. Piscopo*, No. 245835, 2004 WL 1416282 (Mich. Ct. App. June 24, 2004) (unpublished).

On the morning of the private deliverance service at Petitioner's church, the complainant completed a questionnaire about herself. In the questionnaire, she alleged that she had been abused by her mother and sexually abused by a cousin and her father, who was also a pastor. She also stated that she had been raped by a demon as a teenager and that demons continued to torment her by grabbing her ankles in the basement. Petitioner's counsel sought to admit the questionnaire into evidence. In a pre-trial ruling,

the trial court held that the questionnaire was not admissible because it was barred by the rape shield statute, MICH COMP. LAWS 750.520j(1), it was not relevant, and it constituted inadmissible hearsay. The trial court further ruled that the defense could not use the statements in the questionnaire for cross-examination purposes. The trial court also excluded the testimony of Petitioner's expert witness because she had no experience with deliverances.

On January 7, 2003, following a jury trial at the Macomb County Circuit Court, Petitioner was convicted of one count of fourth-degree criminal sexual conduct pursuant to MICH COMP. LAWS 750.520e. He was sentenced to a term of five years of probation.

Petitioner filed an appeal as of right in the Michigan Court of Appeals. He presented the following claims: (1) that his constitutional right of confrontation was violated when the trial court excluded the questionnaire, and (2) that the trial court improperly excluded the testimony of his expert witness. The Michigan Court of Appeals affirmed Petitioner's sentence. *People v. Piscopo*, No. 245835, 2004 WL 1416282 (Mich. Ct. App. June 24, 2004) (unpublished). It held that the disputed evidence was not relevant because the demon-rape and the allegations against complainant's father were "markedly different from [complainant's] allegations against defendant." *Id.* at *5. The Court stated that the trial court had "properly excluded the questionnaire evidence as irrelevant and contrary to the rape-shield laws." *Id.* The court also affirmed the exclusion of defendant's expert witness on state law grounds. Id. at *3 - *4.

Petitioner then filed an application for leave to appeal to the Michigan Supreme Court, raising the same issues. The case was held in abeyance pending a decision in

another case then before the court. *People v. Piscopo, 659* N.W.2d 67 (Table) (2005). After this case was decided, the Supreme Court granted Petitioner's leave to appeal. Having considered the briefs and oral arguments, however, the Court vacated its order and denied the application by a five-to-two vote; it was no longer persuaded that it should review the questions presented. *People v. Piscopo,* 480 Mich. 966 (2007). Justice Markman wrote a lengthy dissent on the exclusion of the questionnaire, arguing that the exclusion constituted reversible error, both as a matter of state law and under the Confrontation Clause of the U.S. Constitution.

Petitioner now seeks relief here by filing the instant petition for writ of habeas corpus. Petitioner has presented the following claims:

I. Whether the Petitioner was denied his Sixth Amendment right to confront witnesses when he was not allowed to question KB about her admission that she had been raped by a demon.

II. Whether the Petitioner was denied his Sixth Amendment right to confront witnesses when he was not allowed to question KB about allegedly false accusations of sexual misconduct against another pastor (her father).

III. Whether the Petitioner was denied his Due Process right to present a defense when an expert witness was not allowed to testify about how an intense emotional experience can affect a person's perceptions about what had occurred.

Two days after filing this application, Petitioner was discharged from custody, having served his term of probation.

### III. STANDARD/ OF REVIEW

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody

> pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

When a state court declines to address the merits of a properly raised issue, however, this Court conducts an independent review of the issue. *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000). The deferential standard of review prescribed by the AEDPA does not apply because "[t]his statute by its own terms is applicable only to habeas claims that were adjudicated on the merits in State court. Where, as here, the state court did not assess the merits of a claim properly raised in a habeas petition . . . questions of law and mixed questions of law and fact [are reviewed] de novo." *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)(citations omitted).

Alternatively, when a state court reaches the merits of a petitioner's habeas claims but does not articulate its reasoning or shows little analysis, the Court must apply a modified AEDPA deferential standard of review. *Maldonado v. Wilson*, 416 F.3d 470, 476 (6th Cir. 2005). "This standard requires a federal court 'to conduct a careful review of the record and applicable law, but nonetheless bars the court from reversing unless the state court's decision is contrary to or an unreasonable application of federal law." *Id.* (citations omitted).

## IV.  DISCUSSION

**1.     Is the Petition Moot Due to Petitioner's Completion of his Probation?**

Having served the term of his probation, Petitioner was discharged from custody two days after filing this application. A petitioner who is not currently incarcerated but serving a term of probation at the time of filing a petition for the writ of habeas corpus meets the "in custody" requirement of 28 U.S.C. § 2254. *See McVeigh v. Smith*, 872 F.3d 725, 727 (6th Cir. 1989) (citing *United States v. Hopkins*, 517 F.2d 420, 423-24 (3d Cir. 1975)); *Lawrence v. 48th Dist. Ct.*, 560 F.3d 475, 480-81 (6th Cir. 2009) (probation's restraint on liberty satisfies in custody requirement). While his writ was timely submitted, the issue arises whether Petitioner's claim is now moot. The court finds that Petitioner's claim is not moot because the petition was filed before Petitioner was discharged from custody and collateral consequences are presumed.

Article III, § 2, of the Constitution requires the existence of a case or controversy through all stages of federal judicial proceedings. This case or controversy requirement

means that, throughout the litigation, the plaintiff "must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Lewis v. Continental Bank Corp.,* 494 U.S. 472, 477 (1990). Where a habeas corpus petitioner challenges a conviction although his sentence has expired, collateral consequences sufficient to satisfy the case or controversy requirement will generally be presumed. *Sibron v. New York,* 392 U.S. 40, 55 (1968); *see also Gentry v. Deuth,* 456 F.3d 687, 693-95 (6th Cir. 2006). Thus, Petitioner's discharge does not render his petition moot.

**2.  Claim I: Inability to Cross-Examine Complainant on Demon-Rape**

Although the Michigan Court of Appeals analyzed the admissibility of the questionnaire, it provided only a cursory analysis of demon-rape issue. This circuit applies modified AEDPA deference in circumstances like this where the state court adjudicated the claim but with little analysis on the substantive constitutional issue. *Maldonado v. Wilson*, 416 F.3d 470, 476 (6th Cir. 2005)). Thus, Petitioner is entitled to relief only if he can show that the Michigan courts' rulings were contrary to, or involved an unreasonable application of, clearly established federal law.

The Sixth Amendment guarantees the criminal defendant the right "to be confronted with the witnesses against him." U.S. CONST. amend. VI. The Confrontation Clause thus provides every defendant with the right to test the credibility of witnesses through cross-examination. *Davis v. Alaska*, 415 U.S. 308, 315-16 (1974); *Mayes v. Sowders*, 621 F.2d 850, 855 (6th Cir.1980). "Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested." *Davis*, 415

U.S. at 316. Indeed, "the cross-examiner is not only permitted to delve into the witness' story to test the witness' perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, i.e. discredit, the witness." *Id.* Moreover, "the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination. *Id.* at 316-17. Furthermore, "a criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness." *Delaware v. Van Arsdall,* 475 U.S. 673, 680 (1986).

In *Boggs v. Collins,* 226 F.3d 728, 737 (6th Cir. 2000), the Sixth Circuit interpreted *Davis* and *Van Arsdall* as setting forth the following clearly-established rule: "cross-examination as to bias, motive or prejudice is constitutionally protected, but cross-examination as to general credibility is not."[1]

Respondent argues that Petitioner fails to establish that the victim was biased or had a motive to make false allegations against Petitioner and that Petitioner wanted to use the evidence only to attack the Complainant's credibility. The Petitioner, however, states that the demon-rape testimony "would have informed the jury that the Complainant had

---

[1] The Sixth Circuit subsequently cast some doubt upon the bright-line distinction set forth in *Boggs*. *See Vasquez v. Jones,* 496 F.3d 564, 573-74 (6th Cir. 2007); *Hargrave v. McKee,* 248 Fed. Appx. 718, 727 (6th Cir. 2007) (unpublished). The *Vasquez* court, however, clarified that *Boggs* may still apply in the special context of rape-shield cases, where "the Confrontation Clause arguably provides defendants less protection than in other cases." *Vasquez,* 496 F.3d at 573. It reasoned that "the right to confront and cross-examine is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." *Id.* (quoting *Chambers v. Mississippi*, 410 U.S. 284, 295 (1973). As this case arises in the rape-shield law context, *Boggs* applies.

delusions about sexual experiences" and that Complainant similarly misperceived Petitioner's conduct during the exorcism by viewing the touching "in sexual terms." At first sight, this is reminiscent of *Hargrave v. McKee,* 248 Fed. Appx. 718, (6th Cir. 2007) (unpublished), upon which Petitioner so heavily relies. In that case, the Sixth Circuit held that the trial court's decision to limit the cross-examination of the complainant about her psychiatric condition implicated Confrontation Clause concerns. It reasoned as follows:

> [W]e would have no difficulty concluding that the Confrontation Clause guaranteed Hargrave the right to cross-examine Warner, the sole eyewitness against him, regarding Warner's possible delusions or other mental limitations affecting her ability accurately to perceive and recall the events at issue. Unlike a general attack on credibility, Hargrave's proposed cross-examination did not seek merely to demonstrate that Warner's past behavior indicated that she might be a person who was more willing to lie under oath than the average person. Rather, Hargrave's proposed cross-examination, if successful, raised a strong possibility that Warner's psychiatric condition rendered her testimony unreliable regarding the very events at issue and, accordingly, was more similar to the possibility of unreliability raised by questions of motive or bias than to that raised by questions of general character for truthfulness.

*Id.* at 727.

Petitioner's issue is arguably a close case, particularly in light of the fact that only the complaining witness witnessed the incident. However, although the complainant in our case allegedly suffered delusions of a sexual nature, there is no evidence to suggest that the demon rape occurred more than once, that it was in any way a recent event, or that she had similar ongoing delusions that might have affected her ability to perceive and recall the event at issue. Furthermore, in his petition, Petitioner acknowledges that his purpose in seeking to use the demon-rape statement in cross-examination was "focused on perceptions and on whether the Complainant's self-admitted perceptions about sex with a

demon called her accusations of the Petitioner into doubt." This appears to reflect an intent to attack the Complainant's general credibility. Indeed, Petitioner does not specifically allege that the Complainant was biased or prejudiced against Petitioner himself or that she had an ulterior motive in testifying against him. The Michigan courts' exclusion of the witness's statements regarding demon-rape was therefore not an unreasonable application of clearly established federal law as set forth in *Davis* and *Van Arnsdall.*

Petitioner also asserts that the exclusion of the proposed testimony denied him the right to present a defense and did not implicate Michigan's rape-shield statute. As a general rule, habeas corpus relief is not available to remedy a state court's error in the application of state law. *See Estelle v. McGuire,* 502 U.S. 62, 67-68. A state court evidentiary ruling may form the basis for habeas relief only if it were so fundamentally unfair as to violate the petitioner's due process rights. *Seymour v. Walker,* 224 F.3d 542, 552 (6th Cir. 2000). Here, the Petitioner contends that he was denied the right to present a defense as a result of the exclusion.

The right of an accused to present a defense has long been recognized as "a fundamental element of due process." *Washington v. State,* 388 U.S. 14, 19 (1967). Yet a defendant's right to present evidence is not unlimited but rather is subject to reasonable restrictions. *See United States v. Scheffer,* 523 U.S. 303, 308 (1998). "A defendant's interest in presenting . . . evidence may thus bow to accommodate other legitimate interests in the criminal trial process." *Id.* In determining whether the exclusion of evidence infringes upon a defendant's rights, the question is not whether the excluded

evidence would have caused the jury to reach a different result. Rather the question is whether the defendant was "afforded a meaningful opportunity to present a complete defense." *Crane v. Kentucky,* 476 U.S. 683, 690 (1986) (quoting *California v. Trombetta,* 467 U.S. 479, 485 (1984)); *see also Chambers v. Mississippi,* 410 U.S. 284, 302 (1973).

Having reviewed the transcript, this Court finds that Petitioner had many opportunities to present evidence regarding the complainant. First, Petitioner had sufficient opportunity to question the complainant at length about the incident and her recollection of events. Petitioner was allowed to cross-examine her and challenge the truthfulness of her testimony. Second, Petitioner had a meaningful opportunity to present defense witnesses of his own. The Court finds that Petitioner has failed to establish that the trial court's ruling violated his right to present a defense or otherwise rendered his trial fundamentally unfair.

3. **Claim II: Inability to Cross-Examine Complainant on Sexual Abuse by Her Pastor-Father**

The Michigan Court of Appeals addressed this issue on the merits; therefore, the AEDPA standard of review applies. Habeas relief is available only if the Michigan courts' limitation on cross-examination was contrary to, or involved an unreasonable application of, clearly established federal law.

Petitioner contends that the purpose of the excluded evidence was to show that the complainant had a bias against pastors because she had been allegedly sexually abused by her pastor-father over a period of ten years. But Petitioner has not articulated any compelling argument that the proposed cross-examination would reveal motive, bias, or

prejudice on the part of the complainant. In fact, during Petitioner's offer of proof during trial, it appears that Petitioner was attempting to show that the victim was not really abused by her father. *See* TR V. 162 ("Would it surprise you that your father denied that?") and TR V. 163 ("Would it surprise you if I told you that an investigator—he told an investigator it wasn't true?"). Thus, it appears that Petitioner sought to highlight a prior false accusation of sexual abuse in order to attack the complainant's general credibility. As the Michigan Court of Appeals noted, the allegations against the complaining witness's father are both removed in time and markedly different from the allegations against Petitioner. Under *Davis* and *Van Arsdall,* that purpose does not implicate the Confrontation Clause. Therefore, the trial court's decision to limit the cross-examination of the Petitioner was not contrary to clearly established federal law. Nor, on the facts of this case, did the restriction violate Petitioner's constitutional right to mount a full and meaningful defense.

### 4. Claim III: Exclusion of Expert Testimony

Petitioner's third claim for relief challenges the trial court's exclusion of the testimony of a proposed defense expert witness. The defense sought to offer this testimony on the topic of how intense emotional events affect perception. The Michigan Court of Appeals held that the trial court had not abused its discretion in excluding the expert testimony, holding that the trial court had acted within its discretion in determining that the proposed expert was not qualified. Petitioner contends that review should be de novo because the Michigan Court of Appeals did not decide this issue on constitutional grounds. A review of Petitioner's state court briefs, however, shows that Petitioner did not

properly phrase his claim in terms of federal constitutional law in the state courts, contending only that exclusion of his expert denied him his right to "due process." This raises the issue of exhaustion.

State prisoners must first exhaust their available state remedies before seeking habeas relief by fairly presenting all their claims to the state courts. 28 U.S.C § 2254(b), (c); *Rhines v. Weber,* 544 U.S. 269, 274 (2005). A petitioner "fairly presents" his claim to the state courts by either (1) relying upon federal cases employing federal constitutional analysis; (2) relying upon state cases employing such an analysis; (3) phrasing the claim in terms of federal constitutional law; or (4) alleging facts well within the mainstream of federal constitutional law. *Clinkscale v. Carter,* 375 F.3d 430, 437 (6th Cir. 2004). General allegations of the denial of rights of "due process" and "fair trial" do not fairly present claims that federal constitutional rights were violated. *McMeans v. Brigano,* 228 F.3d 674, 681 (6th Cir. 2000). "To escape procedural default, [such claims] must of themselves be fairly presented, rather than functioning as catchall language appearing within the presentation of other non-constitutional arguments." *Blackmon v. Booker,* 394 F.3d 399, 401 (6th Cir. 2004).

As noted, Petitioner's state court briefs addressing his third habeas claim contained only general allegations of a denial of due process. Indeed, even his habeas petition contains only oblique references to the inability to present a defense, focusing instead on the state evidentiary rules of expert witness qualification. This claim is thus unexhausted.

A "mixed petition," that is a petition which contains both exhausted and unexhausted claims, must be treated as unexhausted in its entirety. *Rose v. Lundy,* 455

U.S. 509, 522 (1982). A federal habeas court has no authority to grant relief on even an exhausted claim where the petition also contains unexhausted claims. *Rockwell v. Yukin,* 217 F.3d 421, 424 (6th Cir. 2000). However, even though Petitioner's third claim is unexhausted, the Court may nevertheless consider the claim on the merits under certain circumstances. Despite the exhaustion requirement, a habeas claim "may be *denied* on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2) (emphasis added). Thus, a federal court may decide a habeas petition on the merits when the grounds for relief are without merit or are not cognizable on habeas review. *Cain v. Redman,* 947 F.2d 817, 820 (6th Cir. 1991); *Prather v. Rees,* 822 F.2d 1418, 1421-22 (6th Cir. 1987). In such circumstances, the court should dismiss the non-federal or frivolous claim on its merits to save the state courts the useless review of meritless constitutional claims. *Cain,* 947 F.2d at 820.

It is well-established that "federal habeas review does not lie for errors of state law." *Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991). The Sixth Court has held that "[i]n a federal habeas corpus proceeding, it is not the province of a federal appellate court to review the decision of the state's highest court on purely state law." *Long v. Smith,* 663 F.2d 22, 23 (6th Cir. 1981). "Errors by a state court in the admission of evidence are not cognizable in habeas corpus proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." *Kelly v. Withrow,* 25 F.3d 363, 370 (6th Cir. 1994).

Moreover, "state evidentiary rulings cannot rise to the level of due process violations unless they offend [ ] some principle of justice so rooted in the traditions and

conscience of our people as to be ranked as fundamental." *Id.* (internal quotation omitted). Petitioner cites no clearly established Supreme Court precedent holding that a state violates due process by not permitting expert witnesses to testify because they are not qualified, and this Court is aware of none. Thus, the state court's decision is not contrary to or an unreasonable application of Supreme Court precedent.

The Court therefore denies on the merits Petitioner's third claim for habeas relief.

## V. CONCLUSION

For the reasons stated above, the Court denies this petition for writ of habeas corpus relief.

## VI. CERTIFICATE OF APPEALABILITY

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254. A certificate of appealability is proper when a prisoner makes a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The prisoner must show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).

The Court denies Petitioner a certificate of appealability as to his third claim because he has failed to make a substantial showing of the denial of a federal constitutional right. However, because jurists of reason could find this Court's resolution of Petitioner's Claims I and II to be debatable, the Court issues a certificate of appealability as to these claims.

## VII. ORDER

The Petition for Writ of Habeas Corpus is **DENIED**.

A Certificate of Appealability with respect to Claims I and II only is **GRANTED.**

**SO ORDERED**

S/Victoria A. Roberts<br>
Victoria A. Roberts<br>
United States District Judge

Dated: November 22, 2010

---

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on November 22, 2010.

s/Carol A. Pinegar
Deputy Clerk